12-953-cr
United States v. Ibrahim

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of July, two thousand thirteen.

PRESENT:   RALPH K. WINTER,
                    GERARD E. LYNCH,
                    CHRISTOPHER F. DRONEY,
                               *Circuit Judges.*

————————————————————————————————

UNITED STATES OF AMERICA,

                    *Appellee,*

          v.                                              No. 12-953-cr

KAREEM IBRAHIM, AKA AMIR KAREEM,

                    *Defendant - Appellant,*

RUSSELL DEFREITAS, AKA MOHAMMED,
ABDUL KADIR, ABDEL NUR,

                    *Defendants.*[*]

————————————————————————————————

————————————————

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

FOR APPELLANT:          MICHAEL OLIVER HUESTON, Law Offices of Michael O. Hueston, New York, New York (Zoe Dolan, Law Offices of Zoe Dolan, New York, New York, *on the brief*).

FOR APPELLEE:           MARSHALL MILLER, Assistant United States Attorney (Jo Ann M. Navickas, Zainab Ahmad, and Berit W. Berger, Assistant United States Attorneys, *on the brief*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York.

Appeal from the United States District Court for the Eastern District of New York (Dora L. Irizarry, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Defendant-appellant Kareem Ibrahim appeals from the February 24, 2012 judgment of the district court convicting him of various terrorism-related offenses and sentencing him to life imprisonment.[1]  We assume the parties' familiarity with the facts and procedural history of this case, which we summarize only so far as is necessary to understand our rulings.

On the evidence presented at trial, the jury was entitled to find beyond a reasonable doubt that Ibrahim and his co-conspirators Abdul Kadir, Russell Defreitas, and Abdel Nur,

---

[1] Specifically, Ibrahim was sentenced to life imprisonment on Count One, which charged him with conspiracy to bomb a public transportation system, in violation of 18 U.S.C. § 2332f(a)(2), (b)(1)(D), (b)(1)(E), (b)(2)(A), (b)(2)(C), and (c), and to concurrent 20-year sentences on Counts Two through Five.  Count Two charged Ibrahim with conspiracy to destroy a building by fire or explosive, in violation of 18 U.S.C. § 844(i) and (n); Count Three with conspiracy to attack aircraft and aircraft material, in violation of 18 U.S.C. § 32(a)(8); Count Four with conspiracy to destroy international airport facilities, in violation of 18 U.S.C. § 37(a), (b)(1), and (b)(2); and Count Five with conspiracy to attack a mass transportation facility, in violation of 18 U.S.C. § 1992(a)(10), (c)(1), and (c)(2).

2

were planning to blow up John F. Kennedy International Airport ("JFK") before their arrests in 2007.  Ibrahim joined the plot in May 2007 when Defreitas, a former shipping worker at JFK, and Steven Francis, a confidential informant for the FBI, visited Ibrahim's home in Trinidad and told him of their plan.  Ibrahim told them that he believed the plan could work and advised them not to contact Yasin Abu Bakr, the leader of the militant Islamic group Jamaat Al-Muslimeen ("JAM") for financing, but instead to trust Ibrahim to present the plan to his contacts in Iran.  Ibrahim also gave them practical advice on evading the attention of American authorities by communicating in code and limiting what they wrote down or put in emails.  After Defreitas left Trinidad he called Ibrahim, who confirmed that he was arranging for an associate to travel to Iran to present the plot.  In June 2007, Ibrahim was arrested in Trinidad and eventually extradited to the United States.[2]

At Ibrahim's trial, Francis testified extensively about his involvement in the plot.  The government presented hours of video and audio recordings that Francis had made, capturing Ibrahim and his co-conspirators planning the attack, as well as documents seized during arrests and searches of the conspirators and their residences.  Ibrahim testified at length on his own behalf.  He conceded that he had expressed his agreement to join the conspiracy but

---

[2] Defreitas, Kadir, and Nur were also arrested.  Ibrahim's trial was severed and postponed so that he could receive medical treatment.  Defreitas and Kadir were convicted on the same five counts as Ibrahim and were sentenced to life imprisonment.  Their convictions and sentences were recently affirmed in United States v. Kadir, --- F.3d ---, 2013 WL 2360980 (2d Cir. 2013). Nur pleaded guilty to providing material support to a terrorist group and was sentenced to 180 months' imprisonment.  Id. at *2.

argued that he did not mean what he had said and only went along with the plot out of fear for his safety.  He claimed that he had hoped the plot would "just . . . fizzle out."

Ibrahim raises six arguments on appeal: (1) that his testimony was improperly limited, (2) that evidence seized from his Kadir's home was improperly admitted, (3) that the testimony of Dr. Matthew Levitt, a terrorism expert, was improperly admitted, (4) that there was insufficient evidence to sustain his conviction, (5) that his life sentence is procedurally and substantively unreasonable, and (6) that the district court erred in empaneling an anonymous jury.

I.    Ibrahim's Testimony

Ibrahim argues that his trial testimony was improperly restricted.  First, Ibrahim alleges that he should have been allowed to submit the complete version of a redacted affidavit that the government introduced at trial.  While cross-examining Ibrahim, the government offered portions of an affidavit he had submitted to a Trinidadian court in connection with his extradition proceedings, which were inconsistent with Ibrahim's trial testimony.  Ibrahim argues that the entire affidavit should have been admitted for completeness under Federal Rule of Evidence 106, which permits the admission of additional portions of statements that are "necessary to explain the admitted portion, to place it in context, . . . to avoid misleading the trier of fact, or to ensure a fair and impartial understanding of the admitted portion."  United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) (internal quotation marks and citations omitted).  The district court correctly held that the portions of the affidavit that Ibrahim wished to introduce were not necessary to place the

4

admitted portion in context, and were simply self-serving hearsay. Further, any error was harmless, as the jury had before it the tapes of the conversation Ibrahim described in the redacted portion of the affidavit.

Second, Ibrahim argues that his testimony was improperly limited by a series of objections that the district court sustained. After careful review of Ibrahim's testimony, we conclude that Ibrahim was able to testify on all subjects on which the district court sustained objections, often by answering similar, rephrased questions. To the extent that the district court erred in sustaining an objection to the question "Did [Assim] tell you that they wanted to blow up the airport?" because the answer would have gone to Ibrahim's state of mind and therefore would not have been inadmissible hearsay, any error was certainly harmless, as Ibrahim was able to testify in detail about the extent of his knowledge or ignorance of all aspects of the plot.

II.   Evidence Seized From Kadir's Home

Ibrahim argues that the district court improperly admitted documents seized during the search of Kadir's home, contending that they were irrelevant to the case and highly prejudicial. In conspiracy cases, we routinely uphold the introduction of documentary evidence demonstrating links between co-conspirators, see United States v. Mishkin, 317 F.2d 634, 637 (2d Cir. 1963), evidencing motive, see United States v. Salameh, 152 F.3d 88, 111 (2d Cir. 1998), or providing "background information necessary to the jury's understanding of the nature of the conspiratorial agreement," id. The district court explained in a thoughtful written opinion why all of the challenged evidence fell into one of these three

categories, and concluded that the probative value of the admitted evidence outweighed any unfair prejudice to Ibrahim.  The district court did not abuse its discretion in admitting such evidence, see id. at 110-11, and gave the jury the proper limiting instruction to consider the documents only for the purposes for which they were admitted.

III.    Expert Testimony of Dr. Matthew Levitt

At trial, Dr. Matthew Levitt, an expert on terrorist groups, testified about the structures and methods of JAM, Hezbollah, and Al Qaeda.  Ibrahim argues that Levitt's testimony was improperly used to buttress argument about his relationship with Kadir and that the testimony regarding JAM was irrelevant and impermissibly went to the issue of criminal intent.  We review a district court's decision to admit expert testimony for abuse of discretion.  United States v. Massino, 546 F.3d 123, 132 (2d Cir. 2008).  Provided the district court "has conscientiously balanced the proffered evidence's probative value with the risk for prejudice," pursuant to Federal Rule of Evidence 403, "its conclusion will be disturbed only if it is arbitrary or irrational."  United States v. Al–Moayad, 545 F.3d 139, 159-60 (2d Cir. 2008) (internal quotation marks omitted).

Levitt's testimony about Mohsen Rabbani, an Iranian operative who masterminded a terrorist bombing in Argentina in 1994, was relevant, as the government sought to show that Ibrahim and his coconspirators were seeking Iranian backers to fund their plot.  Levitt's testimony about the terrorist groups was properly admitted because, as we noted in Kadir, the testimony was "probative of the intent element of the charged conspiracies" because the government alleged that Ibrahim and his coconspirators intended to obtain support from the

6

groups "and/or identified with their goals," and the testimony was not "unfairly prejudicial." 2013 WL 2360980, at *4.  To the extent that Ibrahim argues that Levitt's testimony improperly went to criminal intent, Levitt never testified to any inferences of his own about Ibrahim's mental state, and nothing prohibited Levitt from testifying to facts or opinions from which the jury could infer that Ibrahim had the requisite mental state.  See United States v. DiDomenico, 985 F.2d 1159, 1165 (2d Cir. 1993).  To the extent that Ibrahim argues that the testimony was unfairly prejudicial, we described Levitt's testimony at the co-defendants' trial as "dry and academic, [and] devoid of vivid imagery that might excite the jury."  2013 WL 2360980, at *3.  The same was true here.

IV.    Sufficiency of Evidence

Ibrahim argues that the evidence presented at trial was insufficient to show that he intended to join the plot.  "We may overturn the convictions on this basis only if, viewing the evidence in the light most favorable to the government, no 'rational trier of fact' could have found that the government established the essential elements of the crimes beyond a reasonable doubt."  United States v. Nouri, 711 F.3d 129, 144 (2d Cir. 2013), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Here, the government provided ample evidence from which a jury could find that Ibrahim knowingly and intentionally joined the conspiracy, including the detailed testimony of his coconspirator Steven Francis and numerous recordings of conversations and telephone calls during which Ibrahim demonstrated his intent.  Moreover, the jury heard Ibrahim's own explanation of his actions, and had the opportunity to judge his credibility against that of Francis and the rest of the

7

evidence.  "Taken in the light most favorable to the prosecution and drawing all reasonable inferences and credibility determinations in its favor, we conclude that this evidence was legally sufficient for a rational jury to conclude that" Ibrahim committed the charged offenses.  United States v. Al Kassar, 660 F.3d 108, 129 (2d Cir. 2011).

V.      Reasonableness of Sentence

     A.      Procedural Challenge

Ibrahim challenges his sentence on three procedural grounds: (1) that the district court should not have applied a terrorism enhancement to his sentence; (2) that the district court's finding of obstruction of justice was speculative; and (3) that the application of the two enhancements violated Apprendi v. New Jersey, 530 U.S. 466 (2000).  These arguments are unavailing.

The district court properly applied both the terrorism and obstruction of justice enhancements.  The terrorism enhancement applies to offenses that "involved" or were "intended to promote" a "federal crime of terrorism," U.S.S.G. § 3A1.4, defined as violations that are "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," 18 U.S.C. § 2332b(g)(5)(A).[3]  It is undisputed that Ibrahim was convicted of federal crimes of terrorism, and the evidence presented at trial showed that Ibrahim was involved in or intended to promote these crimes,

_____

[3] U.S.S.G. § 3A1.4 provides that "[f]or purposes of this guideline, 'federal crime of terrorism' has the meaning given that term in 18 U.S.C. 2332b(g)(5)."  U.S.S.G. § 3A1.4 cmt.1.

8

which were intended to influence by means of intimidation and to retaliate against the government of the United States of America.  To assess an enhancement for obstruction of justice based on false testimony, "a sentencing court must find that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter."  United States v. Salim, 549 F.3d 67, 72 (2d Cir. 2008) (internal quotation marks omitted).  The district court properly applied the enhancement based on a detailed analysis of Ibrahim's perjurious testimony at trial, noting that "the defendant's lies were so brazen and so abundant" that it was "almost difficult to know where to start."

The application of the two enhancements by the district court without jury findings as to the supporting facts did not violate Apprendi.  Because the Sentencing Guidelines are advisory rather than mandatory, see United States v. Booker, 543 U.S. 220 (2005), application of guidelines enhancements that do not increase the statutory maximum or minimum penalty neither implicates nor violates a defendant's Sixth Amendment right to a jury trial.  See Alleyne v. United States, --- U.S. ---, 2013 WL 2922116, at *11-12 (2013) (holding that facts that increase mandatory minimum sentences must be submitted to the jury, but emphasizing that ruling "does not mean that any fact that influences judicial discretion" when imposing a sentence within the range prescribed by statute must be found by a jury); see also United States v. Singletary, 458 F.3d 72, 80 (2d Cir. 2006) (holding that judicial factfinding at sentencing is "permissible – indeed, required – under an advisory Guidelines regime").  The relevant statute here provides for imprisonment "for any term of years or for

9

life," 18 U.S.C. § 2332a(a), and the district court's application of the enhancements affected only the Guidelines recommendation and not the statutory sentencing range.[4]

B.    Substantive Challenge

Ibrahim also argues that his sentence was substantively unreasonable. "In reviewing the substantive reasonableness of a sentence, 'we take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts.'" United States v. Chu, 714 F.3d 742, 746 (2d Cir. 2013), quoting United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). We will set aside a district court's sentence on substantive grounds "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." Cavera, 550 F.3d at 189 (internal quotation marks omitted).

The district court's sentence is well within the range of permissible decisions in these circumstances. As we noted in Kadir, Ibrahim and his co-conspirators "were convicted of conspiring to explode pipelines and jet-fuel tanks at JFK Airport in order to kill countless Americans and other travelers, disrupt air travel, and harm the American economy. The gravity of the crimes for which they were convicted easily justifies the life sentences that were imposed." 2013 WL 2360980, at *8.

---

[4] To the extent that Ibrahim argues that the district court could not have properly applied the enhancements because Ibrahim's trial testimony was unfairly restricted, we have rejected the premise of this argument above, concluding that Ibrahim had ample opportunity to testify at trial about all relevant subjects. Ibrahim was also provided an opportunity to make a statement at sentencing but chose to waive that opportunity.

10

VI.    <u>Anonymous Jury</u>

Ibrahim argues that an anonymous jury was not warranted.  "If a district court has taken reasonable precautions to protect a defendant's fundamental rights, we review its decision to empanel an anonymous jury for abuse of discretion."  <u>Id</u>. at *2.  "A district court may order the empaneling of an anonymous jury upon (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected."  <u>Id</u>. (internal quotation marks omitted).  As in <u>Kadir</u>, given the extensive media coverage of the case and the serious nature of the charges, "[t]he district court reasonably concluded that the jurors would be fearful if their identities were revealed to these defendants."  <u>Id</u>. at *3.[5]  While Ibrahim does not challenge the precautions the district court took to protect his rights, we note that they seem to have been identical to those found sufficient in <u>Kadir</u>.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



_____

[5]  In <u>Kadir</u>, Defreitas had also threatened to harm potential witnesses.  However, we did not rely on this fact in upholding the use of the anonymous jury, noting that "because there were sufficient independent grounds for empaneling an anonymous jury," we did not need to consider the alleged threats.  2013 WL 2360980, at *3.